693 A.2d 539

TOYS "R" US, INC., APPELLANT, v. TOWNSHIP
OF MOUNT OLIVE, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 19, 1997—Decided May 16, 1997.

Before Judges STERN, HUMPHREYS and WECKER.

*Lawrence P. Cohen* argued the cause for appellant (*Courter, Kobert, Laufer & Cohen,* attorneys; *Mr. Cohen,* of counsel, *Michael S. Selvaggi,* on the brief).

*John H. Dorsey* argued the cause for respondent (*Dorsey and Fisher,* attorneys; *Mr. Dorsey,* of counsel, and on the brief).

*Cheryl R. Clarke,* Deputy Attorney General, argued the cause on behalf of the Department of Community Affairs (*Peter Verniero,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel, and *Ms. Clarke,* on the brief).

The opinion of the court was delivered by

HUMPHREYS, J.A.D.

Toys "R" Us, Inc. ("Toys") constructed a large warehouse and distribution center on its property in Mount Olive. Before construction began, Toys obtained various construction permits from the Township of Mount Olive for which Toys paid approximately $560,000. Most of the permits were applied for and paid for in the latter part of 1994. A few were received in February 1995. Mount Olive granted Toys a Certificate of Occupancy in June 1995. A statute, *N.J.S.A.* 52:27D–126a, prohibits a local enforcing agency from assessing and receiving permit fees in excess of the annual cost of the agency's operations.

Toys filed a petition with the Department of Community Affairs pursuant to *N.J.A.C.* 5:23–4.18(j) seeking a refund for a portion of the fees charged to it on the ground that the fees were in excess of

the annual cost of Mount Olive's operations and therefore contravened *N.J.S.A.* 52:27D–126a. Mount Olive's 1994 costs in connection with the issuance of construction permits totaled approximately $326,000. Mount Olive's total permit fees in 1994 exceeded $900,000.

The Department denied Toys' petition. Toys appeals, contending: (1) the Department should have conducted a hearing prior to rendering its decision; and (2) the Department's denial of the refund was arbitrary, capricious and unreasonable.

We have thoroughly reviewed the record and affirm the Department's decision.

I

Toys argues that it was entitled to but did not receive a hearing on its petition.

The Administrative Code provides that "[i]f, upon investigation, the commissioner determines that there is reason to believe that the fees in question do not meet the standards established [in the Code], then the commissioner shall set a time and the place for a hearing." *N.J.A.C.* 5:23–4.18(j)(1)(ii).

The Uniform Administrative Procedure Rules define a "hearing" as "a proceeding conducted by a judge for the purpose of determining disputed issues of fact, law or disposition." *N.J.A.C.* 1:1–2.1. By statute, a hearing is to be held in any "contested" case. *N.J.S.A.* 52:14B–9(a). A contested case is defined as

a proceeding ... in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after the opportunity for an agency hearing....

[*N.J.S.A.* 52:14B–2(b).]

The Commissioner, by letter, advised counsel for Toys that she had received Toys' letter and petition. The Commissioner stated:

Pursuant to the procedure outlined in *N.J.A.C.* 5:23–4.18(j)1.ii., this matter has been referred to our Bureau of Regulatory Affairs. If, after investigation, it is

determined that there is reason to believe that the fees in question do not meet the standards established under the Uniform Construction Code, the matter will be scheduled for hearing in the Office of Administrative Law.

Thank you for bringing this matter to our attention. Once the investigation has been concluded, you will be advised of our findings and, if necessary, the time of the hearing.

Subsequently, the Chief of the Bureau of Regulatory Affairs Department notified Toys and Mount Olive that a public hearing would be held "to gather information only, not serve as a forum for opinion or debate" and that after a review of all the materials submitted

the Department shall issue its findings regarding the fee schedules and conformance with regulatory standards identified in the regulations. Should the fees fail to meet these standards, the Department has the authority to order appropriate corrective action, including repayment of excess fees.

The attorneys for Mount Olive and Toys appeared before the Chief of the Bureau of Regulatory Affairs of the Department. The Chief stated at the outset:

[n]ow, this is a fact finding hearing conducted to comply with the requirements of the New Jersey Administrative Code and both the petitioner and the municipality have been given at least 30 days notice of this hearing. In addition, a letter from me ... to both sides identified the information and material that we considered appropriate in making our determination. Because of the nature and purpose of this hearing it cannot serve as a forum for discussion, argument or debate. We are here to simply gather the relevant facts as they apply to the Mt. Olive Construction Code.

The Chief said that the Bureau would ask questions "in order to clarify some issues and in order that we can understand the material clearly." The Chief said that he would first accept information from Mount Olive and then from Toys. The Chief said "again, I want to caution you that we are simply gathering facts and not entering into discussions or opinions or debates or those kinds of things."

The Chief said that within two weeks after the hearing, either side could

submit written comment which would be the appropriate venue for argument, debate, whatever, that you would want to tell us and then we will close the record in two weeks, make a determination and the Commissioner will issue her determination as quickly thereafter as she is able to.

The Chief and his associate asked if there were any questions. Counsel for Mount Olive said he understood that the hearing was the Department's fact finding and not a deposition "in the normal sense where the adversaries take testimony from their clients" and that the Department was "going to conduct [the hearing] and [the Chief was] going to ask what [he] want[ed] to ask." Counsel for Toys said he did not have any questions at that point.

At the close of the hearing, the Chief said he would take whatever was submitted, review and evaluate it and then the Commissioner would make a final determination. Counsel for Toys said "good." The hearing was then closed. Thereafter, counsel for Toys and Mount Olive both submitted letter memoranda in support of their positions.

 The Department argues that Toys is not entitled under *N.J.A.C.* 5:23–4.18(j)(1)(ii) to an adjudicatory hearing before the Office of Administrative Law. We agree. The Department acts in a legislative role when it reviews fees established by local ordinance. Under these circumstances, an adjudicatory type hearing is not required. *See New Jersey Builders Ass'n v. Sheeran,* 168 *N.J.Super.* 237, 247–48, 402 *A.2d* 956 (App.Div.1978) (proceedings regarding the validity of rates and fees are legislative in nature; as such, they require that all interested parties be given an opportunity to express their views and furnish information). The Administrative Procedure Act, *N.J.S.A.* 52:14B–1 to –24, does not create a substantive right to an administrative hearing; it merely provides for a procedure to be followed in the event an administrative hearing is otherwise required by statutory law or constitutional mandate. *Limongelli v. New Jersey State Bd. of Dentistry,* 137 *N.J.* 317, 325, 645 *A.2d* 677 (1993); *Valdes v. New Jersey State Bd. of Medical Examiners,* 205 *N.J.Super.* 398, 404, 501 *A.2d* 166 (App.Div.1985). We find no such requirement or mandate here.

 We also find no need for a hearing before an Administrative Law Judge. The Department argues persuasively that material facts are not genuinely in dispute in the present case. The Department maintains that Toys did not challenge the Township's

revenue and expenditure figures in the proceedings below, nor is Toys claiming in the present appeal that these figures are incorrect.

We find no sound basis for Toys' contention that it expected to have a subsequent hearing before an Administrative Law Judge if the decision of the agency was adverse. Toys did not request a hearing before the Office of Administrative Law prior to the hearing officer's decision. Additionally, the Chief advised Toys in writing that the matter would be scheduled for a hearing before the Office of Administrative Law *if,* after an investigation, there was reason to believe the fees in question did not meet the standards established under the Uniform Construction Code. The Chief found that Mount Olive's fees complied with the standards and therefore presumably concluded there was no need for a hearing before the Office of Administrative Law. This conclusion was reasonable. The facts and legal arguments were thoroughly developed before the hearing officer. We find no basis for a further hearing before an Administrative Law Judge.

## II

■ The hearing officer found that in reviewing the validity of the municipality's fees under the Code, a multi-year approach should be used. The hearing officer said it is

quite impossible for any municipality to achieve a perfect balance of income and expenses during a single budget cycle. Indeed, a perfect year-end balance would be improper. Fees collected in one year must often offset expenses on that project for the next year or longer. The rules governing fees recognize this fact. The rules encourage funds to be reasonably accumulated during surplus years to cover potential deficits during years of reduced income. The intent is clearly for a multi-year approach.

The hearing officer reviewed Mount Olive's revenue expenditures for the years 1991 to 1995. In 1991, Mount Olive had a deficit of $119,612 and in 1995, a deficit of $26,284. In 1992 and 1993, Mount Olive had respectively a surplus of $18,498 and

$74,519. In 1994, the year in which Toys wishes a refund, Mount Olive had a surplus of $576,641.

The hearing officer found that the years 1991 to 1995

have been ones of increasing construction activity. It is therefore reasonable that [Mount Olive] would show some surplus. Other data submitted by [Mount Olive] suggests that there may be no surplus if we consider data prior to 1991. Equally to the point, the future can be expected to see either a decline or a leveling of new permit applications which should eliminate the surplus.

The hearing officer further found that Mount Olive's permit fees were comparable with other Morris County municipalities and were "markedly lower than the State fee schedule." The hearing officer concluded: "[c]onsidering both the fees and the annual operating figures, a reasonable balance appears to have been achieved. Our analysis provides us with no evidence that the [Mount Olive] fee ordinance was calculated to realize revenue greater than that required to enforce the [code]."

The hearing officer further found that

the Department lacks the authority to order a specific refund to an individual applicant. The Department's standards for fees are targeted toward the overall balance between income and expenses. They do not require any guarantee of such a balance for an individual project.

Further, it would be improper for a municipality to provide a specific refund or enact an amendment to a valid and properly adopted fee schedule simply to benefit a single applicant. Any attempt to do so would create an administrative and logistical nightmare as well as encourage significant inefficiency since all enforcement expenses would be recoverable on an individual permit fee basis.

The hearing officer concluded that based upon the evidence submitted, Mount Olive had not violated the Uniform Construction Code requirements concerning the establishment of fees. The Commissioner adopted the recommendation of the hearing officer.

Toys relies on the literal language of the statute which provides that the fees received by a municipality "shall not exceed the *annual* costs for the operation of the enforcing agency." *N.J.S.A.* 52:27D–126a (emphasis added). Toys argues that it should receive a refund of sixty-two percent of its fees, that amount being the excess of annual cost in 1994. Toys argues that this relief is

permitted and dictated by the Department's regulations. *See N.J.A.C.* 5:23–4.18(j)(2). That regulation provides:

> In addition to any other actions that he may take upon determining that the fees established by a municipality fail to meet the standards of this section, the commissioner may order the repayment of the excess amount of such fees to the persons who have paid them.

> [*Ibid.*]

Toys places too much reliance on the literal language of the statute. Statutes are to be read "sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.'" *Schierstead v. City of Brigantine,* 29 *N.J.* 220, 230, 148 *A.2d* 591 (1959); *see also Roig v. Kelsey,* 135 *N.J.* 500, 515, 641 *A.2d* 248 (1994) (ascertaining legislative intent is the paramount judicial goal; once determined, legislative intent overrides any literal reading of a statute). The agency's construction of the statute and regulations is sensible and its reasons persuasive.

The judicial role in reviewing agency action is limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency bases its action; and (3) whether, in applying legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

> [*Matter of Musick,* 143 *N.J.* 206, 216, 670 *A.2d* 11 (1996).]

The agency action in this matter meets the above criteria. The decision of the Commission is affirmed.