PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-3343
_____

IN RE:  NEW JERSEY TITLE INSURANCE LITIGATION

Edward Lamb; Frances Lamb; Pat Pepe;
Olga Pepe; Cynthia Worth;
Pearl & Plumeri Associates, LLC; Julie Baier; Ian Kornbluth;
Ayanna Pacheco; Terrence Pacheco; Anne Marie Sweeney;
Mark Esposito; Christine Esposito,
*Appellants*

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-08-cv-01425)
District Judge: Honorable Garrett E. Brown, Jr.
_____

Argued April 19, 2012

Before:  McKEE, *Chief Judge*, SLOVITER, *Circuit Judge*
and O'CONNOR, *Associate Justice* (Ret.)[*]
(Filed:  June 14, 2012)
_____

_____

[*] Hon. Sandra Day O'Connor, Associate Justice (Ret.)
of the Supreme Court of the United States, sitting by
designation.

Katrina Carroll
Joseph J. De Palma   (Argued)
Mayra V. Tarantino
Lite, De Palma, Greenberg
Newark, NJ  07102

Jeffrey B. Gittleman
Gerald J. Rodos
Barrack, Rodos & Bacine
Philadelphia, PA  19103

Steven J. Greenfogel
Meredith, Cohen, Greenfogel & Skirnick
Philadelphia, PA  19102

Attorneys for Appellants

Roger B. Kaplan
Kenneth A. Lapatine
Stephen L. Saxl
James I. Serota   (Argued)
Greenberg Traurig
New York, NY  10166

Kevin J. Arquit
Barry R. Ostrager
Patrick T. Shilling
Simpson, Thacher & Bartlett
New York, NY  10017

Christine I. Gannon
Liza M. Walsh
Connell Foley
Roseland, NJ  07068

Guy V. Amoresao
Gibbons
Newark, NJ  07102

Craig A. Linder
Gibson, Dunn & Crutcher
New York, NY  10166

2

Joseph N. Froehlich
David G. Greene
Kevin J. Walsh
Locke Lord Bissell & Liddell
New York, NY  10281

Margaret A. Keane
Dewey & LeBoeuf
East Palo Alto, CA  94303

David M. Foster
Fulbright & Jaworski
Washington, DC  20004

Erica A. Reed
Fulbright & Jaworski
New York, NY  10103

      Attorneys for Appellees

_____

OPINION OF THE COURT

_____


SLOVITER, *Circuit Judge*.

In their challenge to New Jersey's title insurance regulations, Appellants would have this court disregard a decision of the United States Supreme Court and the numerous cases that have relied on it.  We are not about to do that.  Appellants' efforts belong in another venue.

## I.

## Background

Appellants, title insurance purchasers, on behalf of themselves and similarly situated consumers, appeal the District Court's orders dismissing their state and federal antitrust claims against numerous New Jersey title insurance companies.  Appellants claim that the Appellee insurers

collectively fixed title insurance rates in violation of the Sherman Act and the New Jersey Antitrust Act.  The District Court held that Appellants' complaint is barred by the filed rate doctrine, a lack of standing, and federal and state antitrust liability exemptions.

In New Jersey, the Department of Banking and Insurance ("DOBI") approves and regulates title insurance rates.  *See* N.J. Stat. Ann. § 17:1C-19(a)(1).  Insurers may collectively file rates for approval with the DOBI through a licensed "rating organization."  *Id.* § 17:46B-46.  Appellees are members of and file their rates through the New Jersey Land Title Insurance Rating Bureau ("NJTIRB")—a "voluntary association of title insurers" acting under New Jersey law.  App. at 31, 74.  The NJLTIRB "operates, more or less, as a clearing house for its constituent members by collecting their proposed rates and supporting data and submitting them to the [DOBI]."  *In re N.J. Title Ins. Litig.*, No. 08-1425, 2009 WL 3233529, at *1 (D.N.J. Oct. 5, 2009).  New Jersey thus specifically "authorize[s] cooperative action between or among title insurance companies in rate making."  N.J. Stat. Ann. § 17:46B-41.

Once insurers submit rate filings with the DOBI, the Commissioner "shall make such review of the filing as may be necessary to carry out the provisions of [the Title Insurance Act]."  *Id.* § 17:46B-42(c).  The Commissioner may approve the rates, *id.* § 17:46B-45(a), or, after holding a hearing, issue an order disapproving the rates, *id.* § 17:46B-45(b).  Additionally, the Commissioner can only approve rates that "are not unreasonably high, and are not inadequate for the safeness and soundness of the insurer, and are not unfairly discriminatory."  *Id.* § 17:46B-45(a).  Once the DOBI issues its approval, each member of the "title insurance rating organization shall adhere to the filings made on its behalf."  *Id.* § 17:46B-47.  Members, however, can seek to modify their individual rates through a "deviation filing."  *Id.* Moreover, aggrieved parties can challenge title insurance rates through an administrative hearing, after which the

4

Commissioner may deem the rates "no longer effective."[1]  *Id.* § 17:46B-45(c).

On September 19, 2008, Appellants filed a putative class action complaint, alleging that Appellees engaged in collective price fixing in violation of Section 1 of the Sherman Act and the New Jersey Antitrust Act.  Appellants alleged that "[t]hrough NJLTIRB, [Appellees] and their co-conspirators have agreed upon and engaged in concerted efforts to (i) collectively set and charge uniform and supra-competitive rates for title insurance and attendant services in New Jersey, (ii) embed within these title insurance rates payoffs, kickbacks, and other charges that are unrelated to the issuance of title insurance or the business of insurance, and (iii) hide these . . . 'costs' from regulatory scrutiny by funneling them to and through title agents."  App. at 42, 44.  Appellants sought immediate injunctive relief and treble damages.

The District Court dismissed Appellants' complaint under Fed. R. Civ. P. 12(b)(6) but granted Appellants leave to amend their claims.  Specifically, the Court concluded that Appellants' claims are barred by the filed rate doctrine, which precludes antitrust suits based on rates currently filed with federal or state agencies.  *See In re N.J. Title Ins. Litig.*, 2009 WL 3233529, at *3.  On November 4, 2009, Appellants filed a nearly identical amended complaint which the Court also dismissed under 12(b)(6).  *See In re N.J. Title Ins. Litig.*, No. 08-1425, 2010 WL 2710570, at *1 (D.N.J. July 6, 2010).  The Court held that: (1) Appellants lack standing to seek injunctive relief under Article III of the Constitution and Section 16 of the Clayton Act; (2) Appellants' Sherman Act claim is barred by the McCarran-Ferguson Act's antitrust exemption; (3) Appellants' New Jersey Antitrust Act claim is

---

[1] Specifically, N.J. Stat. Ann. § 17:46B-45(c) provides that "[a]ny person or organization aggrieved with respect to any filing which is in effect, may make written application to the commissioner for a hearing thereon," which the commissioner will review to determine if a hearing is necessary.  *Id.* at § 17:46B-45(c).  At oral argument, Appellants admitted that they have not challenged the Appellees' title insurance rates in a formal administrative hearing.

5

barred by N.J. Stat. Ann. § 56:9-5(b)(4)'s antitrust exemption; and (4) the subsequent amendment of Appellants' complaint would be futile. Plaintiffs appeal.

## II.

## Discussion

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. This court has appellate jurisdiction under 28 U.S.C. § 1291 and reviews *de novo* the District Court's dismissal of Appellants' initial and amended complaints. *Utilimax.com, Inc. v. PPL Energy Plus, LLC*, 378 F.3d 303, 306 (3d Cir. 2004). In addition, we review the District Court's refusal to grant Appellants leave to amend their final complaint for abuse of discretion. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

A. *The Filed Rate Doctrine*

Courts often trace the filed rate doctrine to *Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156 (1922). In that case, a shipper alleged that certain railroad carriers conspired to fix freight transportation rates in violation of the Sherman Act. *Id.* at 160-61. The shipper sought damages based on the unusually high rates. *Id.* The Supreme Court, however, denied the shipper's claim because the carriers had been authorized to charge the challenged rates by the Interstate Commerce Commission ("ICC"). *Id.* at 162. The Court reasoned that it would be improper to hold carriers civilly liable for enforcing rates that the ICC had already approved as legal. *Id.* at 162-63. In addition, the Court expressed a concern for rate discrimination, stating that the shipper's potential damages "might, like a rebate, operate to give him a preference over his trade competitors." *Id.* at 163. Finally, the Court considered the impracticability of awarding damages based on a lower hypothetical rate, which would require "reconstituting the whole rate structure"— a task that the Court viewed the ICC as more competent to handle. *Id.* at 164 ("[I]t is the Commission which must determine whether a rate is discriminatory [*i.e.*, legal]; at least, in the first instance.").

6

The filed rate doctrine stood undisturbed by the Supreme Court for almost three quarters of a century when the Court re-examined the doctrine in *Square D Co. v. Niagara Frontier Tariff Bureau Inc.*, 476 U.S. 409 (1986). There, various corporations alleged that the respondents conspired with their rate making bureau to fix freight transportation rates in violation of the Sherman Act. *Id.* at 410-11. The petitioners sought treble damages based on the fixed rates. *Id.* at 410. They argued that "unlike *Keogh*, respondents' rates . . . were not challenged in a formal ICC hearing," thus claiming that the agency's approval was insufficient to trigger the filed rate doctrine. *Id.* at 417; *see also id.* at n.19. Rejecting that argument, the Court reasoned that respondents' rates were "duly submitted, lawful rates under the Interstate Commerce Act in the same sense that the rates filed in *Keogh* were lawful." *Id.* at 417. Therefore, the Court concluded that the petitioners cannot bring a treble-damages antitrust action. *See id.* at 417, 424. Moreover, the Court approvingly quoted the Second Circuit's interpretation of *Keogh*:

> "Rather than limiting its holding to cases where, as in *Keogh*, rates had been investigated and approved by the ICC, the [*Keogh*] Court said broadly that shippers could not recover treble-damages for overcharges whenever tariffs have been filed."

*Id.* at 417 n.19 (quoting *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 760 F.2d 1347, 1351 (2d Cir. 1985)).

This court has recognized that the filed rate doctrine "bars antitrust suits based on rates that have been filed and approved by federal agencies." *Utilimax.com*, 378 F.3d at 306. Other courts of appeals have also extended the doctrine to rates filed with state agencies. *See, e.g.*, *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 20 (2d Cir. 1994) ("[C]ourts have uniformly held, and we agree, that the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies."); *H.J. Inc. v. NW. Bell Tel. Co.*, 954 F.2d 485, 494 (8th Cir. 1992) ("[W]e see no reason to distinguish between rates promulgated by state and federal agencies."). Moreover, although the doctrine "has its origins in . . . cases

interpreting the Interstate Commerce Act," it "has been extended across the spectrum of regulated utilities." *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981).

Appellants argue that the filed rate doctrine does not preclude their antitrust claims because those claims do not implicate the doctrine's underlying policies. Although we have not previously outlined the policies underlying the filed rate doctrine, the Court of Appeals for the Second Circuit has explained that the doctrine is designed to advance two "companion principles": (1) "preventing carriers from engaging in price discrimination as between ratepayers," and (2) "preserving the exclusive role of . . . agencies in approving rates . . . by keeping courts out of the rate-making process," a function that "regulatory agencies are more competent to perform." *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998). These "companion principles" are often called the "nondiscrimination strand" and the "nonjusticiability strand." *Id.* The "nonjusticiability strand" recognizes that "(1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lack the competence to set . . . rates; and (3) the interference of courts in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime." *Sun City Taxpayers' Assoc. v. Citizens Utils. Co.*, 45 F.3d 58, 62 (2d Cir. 1995). The "nondiscrimination strand" recognizes that "victorious plaintiffs would wind up paying less than non-suing ratepayers." *Wegoland Ltd.*, 27 F.3d at 21.

The policies underlying the filed rate doctrine are also reflected in Supreme Court precedent. In *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, for example, the Court refused to grant relief to a petitioner who claimed that its predecessor company had paid unreasonably high electric rates to the respondent. 341 U.S. 246, 247-48 (1951). Addressing the issue of damages, the Court stated that "the problem is whether it is open to the courts to determine what the reasonable rates during the past should have been." *Id.* at 251. Although the Court did not explicitly mention the filed rate doctrine, it relied on the nonjusticiability principle to deny relief, concluding that "reduc[ing] the abstract concept

8

of reasonableness to concrete expression in dollars and cents is the function of the [Agency] Commission." *Id.*

In *Arkansas Louisiana Gas Co.*, on the other hand, the Court relied heavily on the nondiscrimination strand to deny relief. 453 U.S. at 571. There, the plaintiffs, natural gas producers, sued a customer to recover an unfiled gas rate under the parties' purchase agreement. *Id.* at 573-74. The parties' agreement contained a "favored nations clause," which allowed the plaintiffs to charge the defendant at a rate higher than the filed rate if the defendant ever "purchased . . . gas from another party at a rate higher than the one it was paying [the plaintiffs]." *Id.* at 573. Relying on the filed rate doctrine, the Court recognized that "'[t]he considerations underlying the doctrine . . . are preservation of the agency's primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant.'" *Id.* at 577-78 (quoting *City of Cleveland v. Fed. Power Comm'n*, 525 F.2d 845, 854 (D.C. Cir. 1976)). The Court denied plaintiffs' requested relief, however, specifically because awarding damages based on "a rate never filed . . . and thus never found to be reasonable" would "undermine the congressional scheme of uniform rate regulation." *Id.* at 579.

As a preliminary matter, Appellants argue that the District Court erred by concluding that "the mere filing and approval of rates with a regulating agency" triggers the filed rate doctrine. Appellant's Br. at 11. According to Appellants, that approach is only proper where *stare decisis* requires the doctrine's application to the regulatory scheme at issue. *See id.* at 12-13. Thus, before extending the doctrine to a "new regulatory context"—i.e., New Jersey title insurance—Appellants argue that the District Court should have determined whether the doctrine's underlying policies are implicated. *Id.* at 11-14. Yet Appellants offer no authority showing that those policies are elements in determining whether to extend the doctrine to new areas. The Supreme Court has indicated that the doctrine applies whenever rates are properly filed with a regulating agency. *Compare Square D Co.*, 476 U.S. at 422 (applying the doctrine to rates governed by the Interstate Commerce Act and noting that "*Keogh* simply held that an award of treble

damages is not an available remedy for a private shipper claiming that the rate submitted to, and approved by, the ICC was the product of an antitrust violation"), *with Ark. La. Gas Co.*, 453 U.S. at 577 (extending the doctrine to rates governed by the Natural Gas Act because they were "properly filed with the appropriate federal regulatory authority"). Furthermore, the Second Circuit has held that "the doctrine is applied strictly . . . whenever *either* the nondiscrimination strand or the nonjusticiability strand . . . is implicated." *Marcus*, 138 F.3d at 59 (emphasis added).

Appellants argue that this action does not implicate the nonjusticiability strand because it does "not second-guess any ratemaking determination made by the DOBI." Appellants' Br. at 14. They alleged in their complaint that the DOBI has neither "actively supervised the Defendants' collective rate setting scheme" nor "subjected the Defendants to any analysis designed to determine whether [their] filed rates for title insurance and attendant services conformed to . . . statutory requirements." App. at 81. Appellants therefore claim that the doctrine's policy of deferring to agency rate-making expertise (*i.e.*, nonjusticiability) is irrelevant because the DOBI did not exercise any "meaningful review" of the challenged rates. *See* Appellants' Br. at 15.

Appellees counter that the nonjusticiability strand is "actually . . . grounded in concerns about the institutional competence of federal courts to set rates," not "the expertise of state regulatory agencies." Appellees' Br. at 21-22. Thus, they contend that the policy is applicable in this case because Appellants requested the District Court to award damages based on the rates that "would have been paid in the absence of . . . antitrust violations." *Id.* at 23 (quoting Am. Compl. at ¶ 69, App. at 45). Moreover, Appellees argue that *Square D* rejected the idea that the filed rate doctrine only applies if an agency conducts "meaningful review" of the challenged rates. *Id.* at 24.

Appellants' argument is meritless because the nonjusticiability strand recognizes that federal courts are ill-equipped to engage in the rate making process, which does not depend on whether agencies actually use their superior expertise. *See, e.g.*, *Montana-Dakota Utils. Co.*, 341 U.S. at

251 (finding that it is not "open to the courts to determine what the reasonable rates during the past should have been"); *Sun City Taxpayers' Assoc.*, 45 F.3d at 62 ("[C]ourts lack the competence to set utility rates. . . ."); *Wegoland Ltd.*, 27 F.3d at 21 ("Courts are simply ill-suited to systematically second guess the regulators' decisions and overlay their own resolution."). Indeed, Appellants argue that "[t]here is no reason a court cannot determine what [rates] the DOBI would have approved since it does nothing but rubber stamp rates filed by [Appellees]" but, at the same time, suggest that the District Court should have determined what the "competitive rates" would have been in order to award damages. Appellants' Reply Br. at 9. Therefore, even accepting Appellants' logic, their antitrust claims would require the District Court to determine the reasonable rate absent the alleged conspiracy—"a function that . . . regulatory agencies are more competent to perform." *Marcus*, 138 F.3d at 58. Additionally, to the extent that the justiciability principle is aimed at "preserv[ing] . . . the agency's primary jurisdiction over reasonableness of rates," *Hall*, 453 U.S. at 577-78, the adjudication of Appellants' complaint would intrude upon that jurisdiction because it challenges rates that the DOBI has already approved as "not unreasonably high . . . or unfairly discriminatory." N.J. Stat. Ann. § 17:46B-45(a).[2]

Appellants seek to reinforce their argument that the nonjusticiability strand is only implicated where agencies have meaningfully reviewed the challenged rate by relying on

---

[2] Although Appellants state in their complaint that the DOBI has not obtained the type of data necessary to determine whether Appellees' title insurance rates "conformed to . . . statutory requirements," App. at 81, they nonetheless concede that the DOBI approved Appellees' rates, *see* App. at 82. Under New Jersey law, such approval necessarily requires a determination that the rates are "not unreasonably high, and are not inadequate for the safeness and soundness of the insurer, and are not unfairly discriminatory." N.J. Stat. Ann. § 17:46B-45(a); *see also N.J. Builders Ass'n v. Sheeran*, 402 A.2d 956, 961 (N.J. Super. Ct. App. Div. 1979) (noting that N.J. Stat. Ann. § 17:46B-45 evidently requires the DOBI Commissioner to conduct "some degree" of fact-finding).

11

*Brown v. Ticor Title Ins. Co.*, 982 F.2d 386 (9th Cir. 1992). In that case, consumers alleged that various title insurance companies conspired to "fix price levels for title search and examination services." *Id.* at 387. Although the insurers filed their rates with regulating agencies, the relevant statutory schemes required "only 'non-disapproval' of the rates" before they became effective "and d[id] not require compliance with strict guidelines." *Id.* at 394. The court therefore observed that if the challenged rates "were the product of unlawful activity prior to their being filed and were not subjected to meaningful review by the state, then the fact that they were filed does not render them immune from challenge." *Id.* Furthermore, the court reasoned that "[t]he absence of meaningful state review allows the insurers to file any rates they want." *Id.* Thus, it concluded that "the act of filing does not legitimize a rate arrived at by improper action" and refused to apply the filed rate doctrine. *Id.*

Appellants' reliance on *Brown* is unpersuasive. *Brown* adopts a particularly narrow and unprecedented view of the filed rate doctrine. The regulatory schemes at issue in *Brown* also required only "non-disapproval" of the challenged rates, and it is unclear from the court's opinion whether the regulating agencies had to conduct any review of the rates at all. Here, by contrast, the DOBI affirmatively approved Appellees' insurance rates and was legally required to do so before the rates became effective. *See* N.J. Stat. Ann. § 17:46B-45(a). Under New Jersey law, the DOBI is required to review filings to make sure they "produce rates that are not unreasonably high, . . . are not inadequate for the safeness and soundness of the insurer, and are not unfairly discriminatory." *Id.* Accordingly, even if *Brown* adopted a "meaningful review" standard for applying the doctrine, the DOBI would easily meet that requirement, as it: (1) affirmatively approved the challenged rates, and (2) was required to review the rates before issuing its approval. Finally, given Appellants' policy argument, their reliance on *Brown* seems misplaced because the Ninth Circuit's opinion does not mention the nonjusticiability or nondiscrimination strands.

The Supreme Court moreover has rejected the notion that agencies must "meaningfully review" rates under the filed rate doctrine. In *Square D*, the petitioners argued that

12

the doctrine should not bar their antitrust claim because the ICC did not conduct a hearing before approving the disputed rates. *Square D Co.*, 476 U.S. at 417 n.19. The Court, however, clarified that *Keogh* is not limited to situations where rates "'had been investigated and approved by the ICC,'" but applied "'whenever tariffs have been filed.'" *Id.* (quoting *Square D Co.*, 760 F.2d at 1351); *see also Montana-Dakota Utils. Co.*, 341 U.S. at 251 (holding that the petitioner "can claim no rate as a legal right . . . other than the filed rate, whether fixed or merely accepted by the [Agency] Commission"). Similarly, other courts of appeals have held that the filed rate doctrine does not require "meaningful" agency review. *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 402 (7th Cir. 2000) (rejecting the argument that the doctrine should not apply if reviewing agencies "rarely exercise their muscle and thus give no meaningful review to the rate structure"); *Town of Norwood v. New Eng. Power Co.*, 202 F.3d 408, 419 (1st Cir. 2000) ("It is the *filing* of the tariffs, and not any affirmative approval or scrutiny by the agency, that triggers the filed rate doctrine."). Accordingly, the nonjusticiability strand fully supports the District Court's application of the filed rate doctrine in this case.

Appellants claim that their action does not implicate the doctrine's nondiscrimination strand because it "has been brought on behalf of all those similarly situated to the named Plaintiffs, thus eliminating any discrimination issues." Appellants' Br. at 17. Appellees, on the other hand, argue that the nondiscrimination policy is relevant because "not every [title insurance] purchaser will necessarily become a member of the class or obtain recovery," and "some class members may opt out, while others may fail to receive actual notice or may be excluded from the class." Appellees' Br. at 28.

Various courts have recognized that class-actions reduce discrimination concerns. In *Square D*, for instance, the Supreme Court indicated that "the development of class actions . . . might alleviate the . . . concern about unfair rebates" and seems to undermine some of the reasoning supporting the filed rate doctrine. 476 U.S. at 423. Similarly, the Second Circuit has noted that "concerns for discrimination are substantially alleviated in [a] putative class

13

action." *Wegoland Ltd.*, 27 F.3d at 22. Thus, Appellants are correct that their action does not clearly impact the doctrine's nondiscrimination strand. However, we hold that the nonjusticiability policy alone warrants the doctrine's application to Appellants' treble damages Sherman Act and New Jersey Antitrust Act claims.[3] *See Marcus*, 138 F.3d at 59 (noting that the doctrine applies strictly "whenever either the nondiscrimination strand or the nonjusticiability strand . . . is implicated").

This result is also appropriate under New Jersey law. *See Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 701 (3d Cir. 1993) ("Federal courts that decide state law claims are required to apply the substantive law of the state whose laws govern the action." (internal quotation marks and citation omitted)); *see also Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 992-93 (9th Cir. 2000) (applying state law in rejecting application of the filed rate doctrine to cases involving rates set by state agencies).

Appellants argue that New Jersey precedent, particularly *Richardson v. Standard Guaranty Ins. Co.*, 853 A.2d 955 (N.J. Super. Ct. App. Div. 2004), does not support the doctrine's application to their New Jersey Antitrust Act claim. In *Richardson*, the plaintiff alleged that the sales practices of various credit card and insurance companies fraudulently induced her to purchase several insurance policies. *Id.* at 961. The court held that the plaintiff's action—which alleged, inter alia, that the defendants had "unfairly or inaccurately calculated premiums"—was barred by the filed rate doctrine. *Id.* As Appellants point out, the court indicated that the "under-enforcement of ratemaking regulations may constitute a basis for a less rigorous application of the filed rate doctrine." *Id.* at 964. The court, however, emphasized that the statutory framework at issue required the rate regulator (the DOBI) to "examine [rate] filings for their fairness and their ability to disclose terms

---

[3] It is well established that the filed rate doctrine can serve as a defense against both federal and state actions. *See, e.g.*, *Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 228 (1998) (holding that the "respondent's state-law claims are barred by the filed rate doctrine").

relevant to consumers." *Id.* Thus, the court ultimately concluded that "the filed rate doctrine should be applied." *Id.* at 965.

Relying on *Richardson*, Appellants argue that the filed rate doctrine should not bar their state claim because New Jersey's title insurance regulations are under-enforced. More specifically, they claim that "the DOBI has not enacted a single regulation [governing title insurance], despite a Legislative mandate to do so." Appellants' Br. at 43-44. Even assuming those allegations to be true, Appellants' argument is unpersuasive. In particular, the regulations in *Richardson* required credit insurers to file policy rates with the DOBI and required the Commissioner to review those rates for excessiveness. 853 A.2d at 964. A similar regulatory scheme is present here, since insurers must file their rates with the DOBI, *see* N.J. Stat. Ann. § 17:46B-42(a), and the DOBI must review those rates to ensure that they are not "unreasonably high" or "unfairly discriminatory," *see id.* § 17:46B-45(a). Accordingly, state law does not preclude the doctrine's application to Appellants' New Jersey Antitrust Act claim.[4]

B. *Standing to Sue*

Appellants contend that the District Court erred by dismissing their injunctive relief claims[5] under Article III of

---

[4] Appellants also argue that "the filed rate doctrine has been the subject of sustained criticism by the [New Jersey] courts and has *never* been applied to the New Jersey title insurance regulatory regime." Appellants' Br. at 40. However, as the District Court correctly noted, New Jersey courts have recently affirmed the vitality of the filed rate doctrine. *See, e.g., Richardson*, 853 A.2d at 963 ("[T]he doctrine maintains a substantial role in administrative ratemaking . . . .").

[5] Appellants sought, inter alia, a "final injunction . . . enjoining Defendants from engaging in collective rate setting with regard to all future title insurance rate filings with the Department of Insurance." App. at 86.

15

the Constitution and Section 16 of the Clayton Act for lack of standing.[6] "Section 16 of the Clayton Act, which authorizes injunctive relief in private antitrust cases, focuses on 'threatened loss or damage' resulting from a violation of the antitrust laws, and it authorizes an injunction when and under the same conditions as injunctions are granted by 'courts of equity.'" *Weiss v. York Hosp.*, 745 F.2d 786, 829 (3d Cir. 1984) (footnote and citations omitted). To establish standing under Section 16, Appellants must "demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969). Similarly, to establish Article III standing, Appellants must show: "(1) injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005).

Appellants argue that they have standing to pursue their Sherman Act and New Jersey Antitrust Act injunctive relief claims because Appellees' "collusion has deprived, and will continue to deprive [them] of the benefits of free, open and unrestricted competition" in the title insurance market. Appellants' Br. at 31-32. Further, Appellants argue that their injuries are imminent and thus confer standing because: (1) New Jersey requires Appellees to file any new rates with the DOBI; and (2) "people who have already purchased real estate are most likely to do so again and . . . homeowners, on average, change residence every seven years."[7] *Id.* at 36.

---

[6] As the District Court recognized, the filed rate doctrine does not bar injunctive relief claims against future rates. *See Square D. Co.*, 476 U.S. at 422 & n.28 (noting that the filed rate doctrine specifically precludes antitrust claims for treble damages).

[7] Appellants must establish standing based on future harm, since their previous title insurance purchases do not constitute a continuing injury. As the District Court held, the

16

Appellees, on the other hand, argue that Appellants lack standing because they have not alleged that "any new rate submission to the DOBI by NJLTIRB is imminent, [or] that any particular Plaintiff will purchase title insurance in the future." Appellees' Br. at 46.

Appellants do not have standing because they have failed to allege any impending injury. In their complaint, Appellants alleged that:

> (a)   price competition in the sale of title insurance and attendant services has been and will be suppressed, restrained and eliminated;

> (b)   prices for title insurance and attendant services have been and will be raised, fixed, maintained and stabilized at artificially high and non-competitive levels; and,

> (c)   purchasers of title insurance have been and will be deprived of the benefit of free and open competition.

App. at 85. However, as the District Court correctly observed, Appellants did not allege that Appellees have collectively "filed new proposed insurance rates" or "intend to do so in the near future." *In re N.J. Title Ins. Litig.*, 2010 WL 2710570, at *6. Additionally, Appellants did not assert

existing rates do not constitute a cognizable legal injury under the filed rate doctrine. *Keogh*, 260 U.S. at 163 (stating that "[u]nless and until suspended or set aside, th[e filed] rate is made, for all purposes, the legal rate"); *see also Wegoland Ltd.*, 27 F.3d at 18 ("[T]he doctrine holds that any 'filed rate' . . . is per se reasonable and unassailable in judicial proceedings brought by ratepayers."). Thus, Appellants must establish standing based on the possibility of future unfair rates. *See* Phillip E. Areeda & Herbert Hovenkamp, <u>Antitrust Law: An Analysis of Antitrust Principles and Their Application</u> ¶ 247d (3d ed. 2006) ("[T]here is no reason to think *Keogh* would prohibit an injunction against an antitrust violation attending some tariff that would or might be filed in the future. Such a tariff has not been 'filed' at all.").

17

that they intend to re-purchase title insurance.  Although they emphasize that New Jersey law requires insurers to file new rates with the DOBI, that mandate does not make their claims any less speculative because it does not indicate when Appellees will file new rates.  Likewise, Appellants' claim that home owners generally relocate every seven years does not show that any Appellant plans to buy title insurance in the future, thus failing to raise their claims above the speculative level.  Therefore, Appellants have neither established "actual or imminent" injury-in-fact under Article III, *Danvers Motor Co.*, 432 F.3d at 291, nor an "impending violation of the antitrust laws" under the Clayton Act.[8]  *Zenith Radio Corp.*, 395 U.S. at 130.

C.  *Dismissal with Prejudice*

Finally, Appellants argue that if they lack standing, we must hold that the District Court abused its discretion by denying them leave to amend their complaint and "substitute an appropriate plaintiff."  Appellants' Br. at 37-38.  Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires."  Further, this court has "held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

The District Court did not abuse its discretion by denying Appellants leave to amend their complaint.  Appellants lack standing to assert their injunctive relief claims specifically because there is no imminent threat that the NJTIRB will file future rates.  Thus, even if Appellants substituted a plaintiff with concrete plans to purchase title insurance, s/he would still lack standing—thus making the

---

[8] Because Appellants lack standing to pursue their claims, we will not reach their arguments that the District Court erred by concluding that Appellants' injunctive relief claims are barred by the McCarran-Ferguson Act and N.J. Stat. Ann. § 56:9-5(b)(4) antitrust liability exemptions.

18

amendment of Appellants' complaint futile.[9]  The District Court therefore did not abuse its discretion by dismissing Appellants' action with prejudice.

## III.

## Conclusion

For the foregoing reasons, we will affirm the District Court's orders.

---

[9] Although the District Court dismissed Appellants' complaint with prejudice because "the McCarran-Ferguson Act and N.J. Stat. Ann. § 56:9-5(b)(4) bar [Appellants'] federal and state antitrust claims," *In re N.J. Title Ins. Litig.*, 2010 WL 2710570, at *12, we may affirm the District Court's decision on different grounds. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 904 n.1 (3d Cir. 1997).