PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3111
_____

EDWARD LEO,
as executor of the Estate of Dawn L. Leo;
CLIFFORD J. MARCHION;
DONNA MARCHION,
on behalf of themselves and all others similarly situated,
Appellants

v.

NATIONSTAR MORTGAGE LLC OF DELAWARE,
d/b/a Champion Mortgage Co Inc;
GREAT AMERICAN ASSURANCE CO;
WILLIS OF OHIO INC, d/b/a Loan Protector Insurance
Services
_____

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 3-17-cv-05839
District Judge: The Honorable Anne E. Thompson

Submitted Under Third Circuit L.A.R. 34.1(a)
June 19, 2020

Before: SMITH, *Chief Judge,* CHAGARES, and
PORTER, *Circuit Judges*

(Filed: July 1, 2020)

Lawrence E. Bathgate, II
Kyle R. Tognan
Bathgate Wegener & Wolf
One Airport Road
P.O. Box 2043
Lakewood, NJ  08701

Howard M. Bushman
Joseph M. Kaye
Adam M. Moskowitz
Adam A. Schwartzbaum
Moskowitz Law Firm
2 Alhambra Plaza
Suite 601
Coral Gables, FL  33134
        *Counsel for Appellants*

Jan T. Chilton
Erik W. Kemp
Severson & Werson
One Embarcadero Center

Suite 2600
San Francisco, CA  94111

Kevin M. Haas
Clyde & Co US
200 Campus Drive
Suite 300
Florham Park, NJ  07932

Alexander E. Potente
Clyde & Co US
101 Second Street
24th Floor
San Francisco, CA  94105

Edward J. Fanning, Jr.
Gregory J. Hindy
Robert A. Mintz
Scott M. Weingart
McCarter & English
100 Mulberry Street
Four Gateway Center, 14th Floor
Newark, NJ  07102
        *Counsel for Appellees*

_____
3

## OPINION OF THE COURT
_____

SMITH, *Chief Judge.*

This case is about force-placed insurance, sometimes called lender-placed insurance. When a property owner takes out a mortgage—or, as here, a reverse mortgage—that person conveys an interest in real property as security for a loan. To safeguard that security, lenders often require borrowers to maintain hazard insurance that protects the property against natural disasters. If the borrower fails to maintain adequate coverage, the lender may itself buy insurance and then force the borrower to cover the cost. That's what is meant by "force-placed" insurance.

This case is also about the filed-rate doctrine. States regulate the insurance market to see that insurers don't charge too much (lest they earn exorbitant profits), nor too little (lest they be rendered insolvent because of unanticipated claims), nor discriminate unfairly against certain consumers. So states generally require insurers issuing policies in their states to file rates they will charge with an administrative agency. And the filed-rate doctrine "forbids" an insurer from "charg[ing] rates . . . other than those properly filed with the appropriate . . . regulatory authority." *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981).

4

The flipside of the filed-rate doctrine "provides that a rate filed with . . . a governing regulatory agency is unassailable in judicial proceedings brought by ratepayers." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009); *see also McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 236-41 (3d Cir. 2012). And that's true even when the insurance company "defraud[s] an administrative agency to obtain approval of a filed rate." *Taffet v. Southern Co.*, 967 F.2d 1483, 1494-95 (11th Cir. 1992) (en banc); *see also Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 415-17 (1986) (holding the filed-rate doctrine bars antitrust claims); *Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 250-52 (1951) (applying the filed-rate doctrine when one party allegedly defrauded the other in a rate agreement filed with regulatory authorities); *Keogh v. Chi. & Nw. Ry.*, 260 U.S. 156, 161-65 (1922) (holding the filed-rate doctrine foreclosed damages for fraudulently inflated shipping rates since the shipper had filed the inflated rates). The point is that "courts are ill-equipped to engage in the rate making process." *In re N.J. Title Ins. Litig.*, 683 F.3d 451, 457 (3d Cir. 2012). Any court that attempted to do so would inevitably introduce price discrimination into the market, since "victorious plaintiffs would wind up paying less than non-suing ratepayers." *Id.* at 456 (quoting *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 21 (2d Cir. 1994)). In deference, then, to a state's

5

delegation of rate-approval authority to an administrative agency, we stay out of the rate-reviewing business.

In the matter before us, borrowers from New Jersey and North Carolina ask us to review the force-placed-insurance rate charged by their reverse-mortgage lender, Nationstar Mortgage LLC. They allege Nationstar colluded with a hazard insurance company, Great American Assurance Company, and a hazard insurance agent, Willis of Ohio, Inc., to pocket kickbacks on force-placed insurance policies. Specifically, the borrowers say Great American inflated the rate filed with state regulators so it and Willis could return a portion of the profits to Nationstar to induce Nationstar's continued business. The upshot is that even though the borrowers concede they paid the rate on file with the appropriate state regulatory authorities, they claim they paid Nationstar more than Nationstar paid Great American and Willis. That, the borrowers contend, violates

- the terms of their mortgages (or in the alternative, New Jersey law prohibiting unjust enrichment);
- New Jersey's implied covenant of good faith and fair dealing;
- the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1–56:8-20;
- New Jersey law preventing tortious interference with a business relationship;

6

- the federal Truth in Lending Act, 15 U.S.C. §§ 1601–1665 (TILA); and
- the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (RICO).

We must decide whether the filed-rate doctrine blocks these claims.[1] The District Court held that it did, and dismissed the suit.[2] The borrowers timely appealed. After reviewing de novo, *see* 28 U.S.C. § 1291; *Fed. Trade Comm'n v. Shire ViroPharma, Inc.*, 917 F.3d 147, 154 n.12 (3d Cir. 2019), we will affirm. Because the borrowers seek damages tied to an alleged overcharge baked-into a

---

[1] The borrowers do not dispute that New Jersey law apprehends the filed-rate doctrine to the same extent as federal law. *See also In re N.J. Title Ins. Litig.*, 683 F.3d at 459-60. So if the filed-rate doctrine thwarts their federal claims, it thwarts their state-law claims as well.

[2] The District Court had jurisdiction over the federal claims under 28 U.S.C. § 1331, and could exercise supplemental jurisdiction over the state-law claims under § 1367. Because the borrowers styled this as a putative class action for over $5 million in damages, and because at least one borrower is a citizen of a state different from a defendant's, the District Court also had jurisdiction over the state-law claims under § 1332(d)(2)(A).

rate filed with regulatory authorities, the filed-rate doctrine precludes their claims.

*　　*　　*

The borrowers argue our decision in *Alston v. Countrywide Financial Corporation* distinguished between "challenge[s]" to a lender's "allegedly wrongful conduct" and challenges to "the reasonableness or propriety of the rate that triggered that conduct," further concluding that "[i]t is absolutely clear that the filed rate doctrine simply does not apply" to the former. 585 F.3d at 765.

But *Alston* held no such thing. The *Alston* plaintiffs sought statutory damages for violations of a statutory right; unlike these borrowers, granting the *Alston* plaintiffs relief didn't involve "pars[ing] or second guess[ing] rates." *Id.* at 764. That's why the filed-rate doctrine did not apply.

*Alston* was a case about mortgage insurance, a type of policy that low-down-payment borrowers must traditionally buy to protect lenders from the increased risk of default associated with a smaller down payment. The *Alston* plaintiffs bought mortgage insurance from companies their lender referred, only to realize the lender backchanneled with those companies to assume some of the risk in exchange for some of the plaintiffs' premiums.

8

*See id.* at 756-57. That, the plaintiffs alleged, violated their "statutory right" under the Real Estate Settlement Procedures Act to "a real estate settlement free from unlawful kickbacks and unearned fees." *Id.* at 755. And that, they claimed, entitled them to statutory treble damages under that Act. *See id.* (citing 12 U.S.C. § 2607(d)(2)).

That focus on statutory damages allowed the *Alston* plaintiffs to dodge the filed-rate doctrine. *See also Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1327 n.8 (11th Cir. 2018) ("*Alston* seems to be making the rather unremarkable point that the reach of the filed-rate doctrine can be circumscribed by legislation that confers to individuals a private right of action."). Simply put, the *Alston* plaintiffs weren't seeking damages tied to the amount of an alleged overcharge.

In contrast, these borrowers *do* seek damages tied to the amount of an alleged overcharge: they seek damages caused by "unreasonably high force-placed insurance premiums." Am. Compl. ¶¶ 187, 193; *accord id.* ¶¶ 6, 105, 117, 130, 141, 148, 168. By extension, they functionally challenge the reasonableness of rates filed with state regulators.[3]

---

[3] Perhaps recognizing this point, the borrowers argue that even if the filed-rate doctrine derails their RICO and state-law claims, we should spare their TILA claim since that

Today, we reiterate that the filed-rate doctrine brooks no distinction between, on one hand, challenging a filed rate as unreasonable and, on the other hand, challenging an overcharge fraudulently included in a filed rate. We noted as much in *In re New Jersey Title Insurance Litigation* and its companion, *McCray v. Fidelity National Title Insurance Co.*, and in *AT&T Corporation v. JMC Telecommunications, LLC*. In the first two cases, the filed-rate doctrine stymied allegations that insurance companies "collectively set and charge[d] uniform and supra-competitive rates," and "embed[ded] within th[o]se . . . rates payoffs, kickbacks, and other charges that are unrelated to the issuance of [] insurance." *In re N.J. Title Ins. Litig.*, 683 F.3d at 454; *see also McCray*, 682 F.3d at 234-35 (alleging insurance companies hoodwinked state regulators into approving rates "consist[ing] of costs unrelated to the issuance of title insurance, including kickbacks and other financial inducements title insurers

---

statute contemplates "remedies that can be awarded without the need to assess the reasonableness of any filed rate." Appellants' Br. 33-37 (emphasis omitted). But they never made that argument to the District Court—despite filing a 120-page opposition to Nationstar, Great American, and Willis' motions to dismiss based on the filed-rate doctrine. So they forfeited the argument; we will not consider it now. *See United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 300 (3d Cir. 2013).

provide to title agents"). In *AT&T*, the filed-rate doctrine prevented a prepaid-telephone-card seller from bringing breach-of-contract and state-law fraud claims against AT&T after AT&T allegedly overcharged the seller based on a service agreement filed with regulators. *See* 470 F.3d 525, 531-32, 534-35 (3d Cir. 2006). At bottom, each case stands for the proposition that "there is no fraud exception to the filed rate doctrine." *Id.* at 535.

These facts show why. The filed-rate doctrine seeks to "preserv[e] the exclusive role of . . . agencies in approving rates . . . by keeping courts out of the rate-making process." *In re N.J. Title Ins. Litig.*, 683 F.3d at 455-56 (omissions in original) (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998)) (calling this the filed-rate doctrine's "nonjusticiability strand"). Yet if we ruled for the borrowers, calculating damages would require determining how much we think they should have been charged for hazard insurance—a new, lower-than-filed-rate price tethered only to our conception of an appropriate kickback-free rate.[4] *See also id.* at 457 (denying plaintiffs'

--------

[4] That is true even though Nationstar—not the borrowers—pays the premium, since this "nonjusticiability principle does not rest on the plaintiff's identity." *Patel*, 904 F.3d at 1322 (noting "[e]ven non-customers, for instance, cannot directly challenge a filed rate"); *see also Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 259 (2d Cir. 2015) (holding "a claim challenging a

11

claims since calculating damages "require[d] the District Court to determine the reasonable rate absent the alleged conspiracy—'a function that . . . regulatory agencies are more competent to perform'" (omission in original) (quoting *Marcus*, 138 F.3d at 58)).

And the borrowers' suit confronts an even more formidable obstacle in the filed-rate doctrine's other goal: "preventing" insurers "from engaging in price discrimination as between ratepayers." *Id.* at 455-56 (quoting *Marcus*, 138 F.3d at 58) (calling this the filed-rate doctrine's "nondiscrimination strand"). If we forced Nationstar to pay damages, we would be giving these borrowers a better price for force-placed insurance than other New Jersey and North Carolina borrowers using a different lender but still obtaining force-placed insurance from Great American. *See also Keogh*, 260 U.S. at 163 (observing that allowing "damages resulting from the exaction of a[n inflated filed] rate" would, "like a rebate, operate to give [a plaintiff] a preference over his . . . competitors").[5]

---

regulator-approved rate is subject to the filed rate doctrine whether or not the rate is passed through an intermediary").

[5] Considering this nondiscrimination principle further distinguishes this case from *Alston*: granting the *Alston* plaintiffs statutory damages didn't precipitate any

12

Just as the *In re New Jersey Title Insurance Litigation*/*McCray* court refused to "subvert the authority of rate-setting bodies and undermine the regulatory regime" or to countenance "victorious plaintiffs . . . paying less than non-suing ratepayers," we will not consider these borrowers' claims. *In re N.J. Title Ins. Litig.*, 683 F.3d at 456 (first quoting *Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*, 45 F.3d 58, 62 (2d Cir. 1995), then quoting *Wegoland Ltd.*, 27 F.3d at 21). And other circuits agree.

The Eleventh Circuit affirmed the dismissal of a materially identical complaint—filed by the same attorneys who represent the borrowers here—because of the filed-rate doctrine. *See Patel*, 904 F.3d at 1326 ("The plain language of the complaint[] therefore shows that the plaintiffs are challenging the reasonableness of [their insurer]'s premiums; and since these premiums are based upon rates filed with state regulators, plaintiffs are directly attacking those rates as being unreasonable as well."). The Second Circuit similarly applied the doctrine to strike a RICO claim alleging borrowers "were fraudulently overbilled" for force-placed insurance "because the [filed] rates they were charged did not reflect secret 'rebates' and 'kickbacks.'" *Rothstein*, 794 F.3d at 259; *see also id.* at 262 (noting "it is squarely for the regulators to say what

---

discrimination, since the relief didn't impact the price they paid for mortgage insurance. *See* 585 F.3d at 764.

should or should not be included in a filed rate"). And the Eighth Circuit likewise held that the filed-rate doctrine prevents a RICO suit for damages relating to a fraudulent rate. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 492 (8th Cir. 1992).[6]

\* \* \*

---

[6] Contrary to what the borrowers say, the Sixth Circuit does not disagree. In *Williams v. Duke Energy International, Inc.*, that court confronted fraud allegations extrinsic to an agency-approved rate: A power company wanted state regulators to approve a proposed rate plan. But objections from several large customers threatened to sink the proposal. So the power company allegedly bribed the customers to drop their objections. *See* 681 F.3d 788, 792-93 (6th Cir. 2012). The Sixth Circuit held that the filed-rate doctrine didn't shield the power company from federal and state-law fraud claims since those claims "d[id] not concern the particular rate . . . but rather payments made outside of the rate scheme." *Id.* at 797. In contrast, when the Sixth Circuit confronts fraud allegations intrinsic to a filed rate—like the borrowers' allegations here—they apply the filed-rate doctrine. *See, e.g.*, *Brown v. Cassens Transp. Co.*, 675 F.3d 946, 955 (6th Cir. 2012), *overruled on other grounds by Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013) (en banc).

14

Once an insurance rate is filed with the appropriate regulatory body, we have no ability to effectively reduce it by awarding damages for an alleged overcharge: the filed-rate doctrine prevents courts from deciding whether the rate is unreasonable or fraudulently inflated. Because Great American filed this force-placed hazard insurance rate with the appropriate state agencies, the District Court properly dismissed claims alleging the rate was fraudulently inflated and seeking damages tied to the purported overcharge. We will affirm.