# IN THE COURT OF APPEALS OF IOWA

No. 23-0157
Filed April 10, 2024

**KEITH RATH and DENNIS FALTIS,**
    Plaintiffs-Appellants,

**vs.**

**ARCH INSURANCE COMPANY,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Linn County, David M. Cox, Judge.

Plaintiffs appeal from the district court's grant of summary judgment dismissing breach-of-contract and related claims because it concluded that plaintiffs are not intended third-party beneficiaries of a force-placed insurance policy issued by the defendant. **REVERSED AND REMANDED.**

Claire M. Diallo and James C. Larew of Larew Law Office, Iowa City, for appellants.

Mollie Pawlosky of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellee.

Heard by Schumacher, P.J., Langholz, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**LANGHOLZ, Judge.**

Keith Rath has a dispute with the insurer of his home—Arch Insurance Company—over coverage for damage from the derecho that hit Cedar Rapids in 2020. But Rath did not contract directly with Arch for its insurance coverage. Rather, the bank holding a security interest in his home contracted with Arch to obtain a force-placed policy after Rath's homeowners insurance lapsed. So when Rath sued Arch for breach of contract and related claims, Arch sought to cut him off at the pass—arguing that he had no right to sue because Rath was not an intended third-party beneficiary of the contract between Arch and the bank. The district court agreed with Arch and granted Rath summary judgment on that basis.

But on this narrow question of contract interpretation, we disagree. The parties chose to replace text in the policy stating that Rath, as the "Borrower," "has no interest in this policy" with an endorsement expressly giving Rath a benefit. That endorsement provides that while Rath "is neither a Named Insured nor an additional named insured under the policy," he "shall be considered an additional loss payee only as respects amounts of insurance over and above the interests of" the bank in his home. And it increases the amount of insurance from only enough to cover the bank's interest to whatever amount the parties set on the notice of insurance for the property. We see no possible purpose for this endorsement besides providing a benefit to Rath.

So because the insurance contract manifests an intent to benefit Rath, he is an intended third-party beneficiary under the contract. And the district court erred in dismissing his claims based on the contrary conclusion. We thus reverse and remand for Rath to continue to pursue his claims in the district court.

I.

Keith Rath lives in a home in Cedar Rapids that he bought under a real-estate-installment-sales contract now held by First National Bank of America. While the actual series of transactions and parties involved is a bit complicated—and not relevant to this appeal—in essence, the bank is now Rath's lender for a loan secured by his home.[1] At some point, Rath let his homeowners insurance lapse in violation of the terms of the contract.

When the bank learned of the lapse, it notified Rath: "Because property insurance is required on your property, we bought insurance for your property. You must pay us for any period during which the insurance we buy is in effect but you do not have insurance."[2] The bank also warned Rath that the insurance it bought might be "significantly more expensive than the insurance" he could obtain himself and might provide less coverage than such a personal policy. Rath then began paying monthly premiums for this insurance to the bank.

*The Insurance Contract.* The insurance for Rath's home was obtained by the bank from Arch Insurance Company under a mortgage hazard insurance policy. This type of insurance—often referred to as force-placed insurance

---

[1] The other plaintiff, Dennis Faltis, is the owner of the business entity that originally sold the home under a real-estate-installment-sales contract to a business entity owned by Rath. Faltis's business eventually transferred its interest in the contract to the bank in return for immediate access to cash. And Rath then began making his monthly payments under the contract directly to the bank. Because any further distinction between the plaintiffs or their related business entities is irrelevant to deciding this appeal, for simplicity, we refer only to Rath.

[2] The insurance documents contain many words and phrases that are bolded for emphasis or because the word or phrase is a defined term. For readability, we omit all such bold type without noting the omission. The insurance policy also capitalizes defined terms regardless of the term's placement in a sentence. We do not alter this capitalization.

because it is involuntarily forced upon the owner of the insured property—is mainly designed to protect the interests of the bank on property that secures its loans. *See Leo v. Nationstar Mortg. LLC*, 964 F.3d 213, 214 (3d Cir. 2020)*.*

Consistent with that core purpose, the policy warns in a general statement on its cover pages that it does not "provide coverage for the Interest or equity of the Borrower." It later defines the "Named Insured" as "the creditor, lending institution, company, or person holding and/or servicing the Mortgagee Interest on the Described Location." And it expressly confirms that "[t]he Borrower is not a Named Insured under this policy and no coverage is provided, either directly or indirectly, to the Borrower." The policy's default text also defines the Borrower and then makes abundantly clear: "The Borrower has no interest in this policy."

But that last line of default text does not remain in the policy as in force here. It is stricken and replaced with text from an Amount-of-Insurance endorsement that the parties added to the policy. So rather than having "no interest in this policy," under the endorsement: "The Borrower is neither a Named Insured nor an additional named insured under this policy; however, the Borrower shall be considered an additional loss payee only as respects amounts of insurance over and above the interests of the Named Insured in the Described Location."

As one might expect—given its name—the endorsement also changes the amount of insurance coverage from the default policy text. That default text limits coverage to only the bank's interest in the property by providing "in no event shall We pay . . . an amount greater than the loan balance." But the endorsement instead provides that Arch will pay "the amount entered on a Notice of Insurance,

as respects that Building," and that "the amount designated . . . may be over and above the interests of the Named Insured."

Arch issued a notice of insurance to Rath (the Borrower under the policy) and the bank (the Named Insured) covering his home from April 2020 to April 2021. The notice listed residential coverage in the amount of $72,151.19. The notice included disclaimers:

> This is not a Homeowner's Policy: This insurance provides dwelling protection against loss to the property from perils including but not limited to fire, lightning, explosion, vandalism and riot; subject to the terms, conditions and exclusions set forth in the lenders master policy. This coverage may not meet your insurance needs. There is no liability, theft of contents, flood or earthquake coverage. In the event of a total loss, the limits provided above may not be adequate to restore the property.

> Deductible: In the event of loss, this policy shall be subject to a deductible as defined in the policy Declarations of the lender's master policy. If more than one dwelling is insured and damaged by the same occurrence, the deductible shall apply separately to each dwelling.

> This Notice of Insurance is for information only. It neither amends, extends nor alters the coverage afforded by the lender's master policy which it describes.

The notice also listed the annual premium for the policy, which Rath paid plus service fees in monthly payments to the bank.

*The Storm.* In August 2020, a derecho swept across Iowa, hitting Cedar Rapids especially hard. *See generally* NOAA National Weather Service, *August 10, 2020, Midwest Derecho: The Costliest Severe Thunderstorm Event in United States History*, https://storymaps.arcgis.com/stories/f98352e2153b4865b99ba53b 86021b65 (Aug. 6, 2021). Rath's home was not spared from damage. A tree fell on the house and it sustained wind damage. Among other damage, Rath believes

most of the roof was damaged, along with siding, windows, and electrical systems. And so, Rath reported the damage to the bank, which made a claim to Arch under the policy. After Arch's adjuster agreed that "the dwelling sustained damage due to wind and tree impact," Arch decided that there was a covered loss of $1222.37 and mailed a check for that amount directly to Rath.

Rath disagreed with Arch's decision, contending that the adjuster "missed a lot during the initial visit." So the bank reached out on his behalf to Arch requesting a second visit. Arch refused and explained what additional information it would need to consider adjusting the amount, including estimates from at least three contractors. Rath eventually got one repair estimate "valu[ing] the loss at a replacement cost value of $23,331.67 and an actual cash value of $19,442.97." He claims that he could not get other contractors to his property "because all of them were overwhelmed with all the damage to properties" and "were overbooked due to the huge number of Derecho losses in the area."

The record is unclear whether Rath provided the single estimate to Arch. But he did not receive any more payments. As of November 2022, he had not made all the needed repairs to his home. And Arch closed the claim with a notation that the bank did "not anticipate repairs to be done or to pursue depreciation."

*This Proceeding.* About a year after the storm, Rath sued Arch over this dispute. In his eventual second amended petition, Rath claimed that Arch breached the insurance contract by denying proper payment for his losses and refusing to engage in the appraisal process under the policy. He also brought claims of bad faith and unjust enrichment and sought declaratory and injunctive relief related to his rights under the policy and the appraisal process.

Arch moved for summary judgment based on the sole argument that Rath is not an intended third-party beneficiary of the insurance contract between Arch and the bank. Rath agreed that the third-party-beneficiary issue could be resolved as a matter of law but moved for partial summary judgment seeking a ruling that he *was* an intended third-party beneficiary of the contract. The district court denied Rath's motion and granted Arch summary judgment on all Rath's claims. The court reasoned that Rath was not an intended third-party beneficiary able to sue under the insurance policy because it "includes clear language that negates coverage for a borrower under the policy" and that "[t]here is no language in the policy, including the provisions relied on by Plaintiffs, that shows that there was any intent by the contracting parties to provide for Plaintiffs to have any third-party benefit on Plaintiffs." And because the breach-of-contract claim fails, the court concluded that Rath's other claims must fail as a matter of law as well.

Rath now appeals the district court's grant of summary judgment and dismissal of all his claims.[3]

---

[3] Rath includes a stray reference in the conclusion of his opening brief asking for reversal of the denial of his cross-motion for partial summary judgment as well. But in his statement of the issues and argument section of his brief he only challenges the *grant* of summary judgment—not the denial of his cross-motion. He thus failed to properly raise a challenge to that ruling and we do not consider it. *See Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (holding that "random mention" of issue in a brief "without elaboration or supportive authority, is insufficient to raise the issue" for appellate review): *see also* Iowa R. App. P. 6.903(2)(a)(3), (8). In any event, since Rath sought only a legal ruling that he is a third-party beneficiary of the insurance policy—which we necessarily provide in this opinion—the disposition of his cross-motion is largely academic as a practical matter. *See United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d 101, 103 (Iowa 2000) (explaining "that an appellate decision becomes the law of the case" and "issues decided by an appellate court generally cannot be reheard, reconsidered, or relitigated in the trial court").

II.

To sue for breach of contract, one normally needs to be a party to the contract. *See Davis v. Clinton Water-Works Co.*, 6 N.W. 126, 127 (Iowa 1880) ("It is a rule of law, familiar to the profession, that a privity of contract must exist between the parties to an action upon a contract."). A stranger to the contract generally has no legal claim to make the parties abide by it—even if their doing so would give some incidental benefit to the stranger. *Id.*; *see, e.g., Uhl v. City of Sioux City*, 490 N.W.2d 69, 72–73 (Iowa Ct. App. 1992) (holding that landowner near a potential road that city agreed to build in a contract with the State had no right to enforce the contract). But Iowa law recognizes an exception to this general rule—an intended third-party beneficiary of a contract may sue under the contract to remedy the breach of a duty benefitting the third party. *See Vogan v. Hayes Appraisal Assocs., Inc.*, 588 N.W.2d 420, 423–24 (Iowa 1999) (holding that homeowners were intended third-party beneficiaries of a contract between their bank and an appraiser to monitor progress of the construction of their home and thus could sue to remedy the appraiser's breach of contract by preparing faulty progress reports).

Distinguishing between an intended third-party beneficiary and an incidental beneficiary is mainly a question "whether the contract manifests an intent to benefit a third party." *Id.* at 423. "The intent need not be to benefit a third party directly." *Tredrea v. Anesthesia & Analgesia, P.C.*, 584 N.W.2d 276, 281 (Iowa 1998). And it need not be the only intent. *See Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216, 225 (Iowa 1988) ("Numerous other courts have found that the intent to benefit oneself and the intent to benefit a third party are not mutually exclusive.").

For "[c]ontracting parties may have several purposes or intended results in mind when entering a contract." *Id.* And of course, each contracting party likely has distinct intentions. *See Tredrea*, 584 N.W.2d at 281–82 ("The two parties have purposes, motives and intentions; but they never have quite the same ones." (quoting 4 Arthur Linton Corbin, *A Comprehensive Treatise on the Working Rules of Contract Law* § 776, at 15–16 (1951))).

Following the lead of the Second Restatement of Contracts, our supreme court guides us to focus on the intent of the promisee—who presumably bargained for the term—rather than the promisor—who must perform the duty sought to be enforced by the third party. *See id.* ("In third-party cases, the right of such party does not depend upon the purpose, motive, or intent of the promisor. The motivating cause of his making the promise is usually his desire for the consideration given by the promisee." (cleaned up)); *see also* Restatement (Second) of Contracts § 302 (Am. Law. Inst. 1979). And "we look to the contract itself, and to the circumstances surrounding it," to decide whether it manifests this required intent. *Midwest Dredging Co.*, 424 N.W.2d at 225.

To be sure, the contracting parties may expressly agree in the contract that they do not intend to benefit any third party. And if they do so unambiguously, the contract's express disclaimer ends the inquiry—we must enforce the contract as written and cannot find a contrary intent. *See RPC Liquidation v. Iowa Dep't of Transp.*, 717 N.W.2d 317, 320–25 (Iowa 2006) (holding that subcontractor was precluded from being a third-party beneficiary by contract term that "it is not intended by any of the provisions of any part of the contract documents to create in the public or any member thereof a third party beneficiary hereunder" (emphasis

omitted)); *cf. Walters v. Kautzky*, 680 N.W.2d 1, 3–4 (Iowa 2004) (holding that inmates were not third-party beneficiaries of a legal services contract between the State Public Defender and an attorney because the contract implemented another agreement between the State Public Defender and Department of Corrections including a term that "there are no third party beneficiaries to this Agreement" (cleaned up)).

With these legal principles in mind, we review the district court's grant of summary judgment for corrections of errors of law. *See Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 500 (Iowa 2013). Interpreting an insurance policy is a legal question. *See id.* And so is deciding whether a person is an intended third-party beneficiary. *See RPC Liquidation*, 717 N.W.2d at 319. Thus, we do not defer to the district court's resolution of these matters. *See id.* "[W]e examine the record in the light most favorable to" Rath, as "the nonmoving party." *Boelman*, 826 N.W.2d at 501. And if we encounter a material factual dispute, then summary judgment should not have been granted. *See id.*

Rath's main argument that he is an intended third-party beneficiary of the insurance policy relies on the Amount-of-Insurance endorsement.[4] He argues that this provision manifests an unambiguous intent to benefit him by increasing the policy's coverage from only the bank's interest in his home to whatever amount the parties chose to select on the Notice of Insurance—even "over and above the interests of the Named Insured." And he finds the same clear intent in the endorsement's text making him "an additional loss payee only as respects

---

[4] Given our resolution based on this argument, we need not consider whether any of the other contract terms highlighted by Rath could also show the required intent.

amounts of insurance over and above the interests of the Named Insured in the Described Location."

We agree with Rath that the endorsement manifests an unambiguous intent to benefit him. Indeed, we can conceive of no other possible intent for contract provisions increasing the coverage above the bank's interest and giving Rath a right to payment. And Arch has offered no contrary theory of possible intent—even when pressed directly at oral argument.

The intent to benefit is manifested even more clearly in the endorsement's text than other contracts that have been held to grant third-party-beneficiary rights. The benefit provided can be seen from the face of a written contract—not just gleaned from the circumstances of an oral agreement, *see Vogan*, 588 N.W.2d at 423–24, nor implied from the general subcontracting structure of a written contract and the knowledge of the parties, *see Midwest Dredging*, 424 N.W.2d at 225–26. And though it need not do so, the text shows an intent to benefit Rath directly—not just indirectly. *See Tredrea*, 584 N.W.2d at 281–82.

In reaching a contrary conclusion, the district court reasoned that the contracting parties agreed to provisions in the contract that are "clear, express disclaimers of any third-party beneficiary status" for Rath. Arch advances the same argument on appeal. But none of the provisions relied on by the court and Arch—nor any other in the policy—even uses the term "third-party beneficiary." Rather, those provisions say that Rath, as the borrower, "is neither a Named Insured nor an additional named insured under this policy," that "no coverage is provided, either directly or indirectly, to" him, and that the policy does not "provide coverage for the Interest or equity of the Borrower."

This language is far afield from the text previously held to be an unambiguous disclaimer of third-party-beneficiary status. In both prior supreme court cases, the contract said expressly that it did not create any *third-party beneficiaries*. *See RPC Liquidation*, 717 N.W.2d at 320–21 (saying that "it is specifically agreed between the parties executing this contract that it is not intended by any of the provisions of any part of the contract documents to create in the public or any member thereof a *third party beneficiary* hereunder" (emphasis omitted and added)); *Walters*, 680 N.W.2d at 3–4 (saying that "there are no *third party beneficiaries* to this Agreement" (cleaned up) (emphasis added)). This makes sense because if we must imply whether the parties are intending to disclaim a benefit to third parties—rather than just enforcing an express provision as written—we are essentially back to the normal analysis of deciding "whether the contract manifests an intent to benefit a third party." *Vogan*, 588 N.W.2d at 423.

Saying that Rath is not a "Named Insured nor an additional named insured" is not the same as saying he is not a third-party beneficiary. Those are distinct concepts. *See Mosely v. Balboa Ins. Co.*, No. 5:10-CV-0132, 2013 WL 5938096, at *6 (W.D.N.C. Nov. 5, 2013) (explaining a disclaimer of "'insured' or 'additional insured'" status in a contract "does not exclude or otherwise deal with" third-party beneficiary status under North Carolina law); *Hickman v. SAFECO Ins. Co. of Am.*, 695 N.W.2d 365, 366–67 (Minn. 2005) (reversing court of appeals decision that borrower "was not a third-party beneficiary" under force-placed insurance policy "because he was not the named insured or listed as an insured under the policy" (cleaned up)); *cf. Osmic v. Nationwide Agribusiness Ins. Co.*, 841 N.W.2d 853, 859–61 (Iowa 2014) (applying third-party beneficiary analysis to a car passenger

who fell under express coverage including passengers as additional insureds in policy held by car owner while favorably citing the Restatement's Illustration 4 that "indicates a beneficiary of a life insurance policy would be considered a third-party beneficiary of the life insurance contract").

Perhaps the policy's lack-of-coverage text comes closest to expressing some intent not to benefit Rath. But even if it could be interpreted to mean not just that Rath has no coverage but also that the policy gives no benefit, that term would conflict with the express terms of the Amount-of-Insurance endorsement, which contains no such text and makes Rath a loss payee. And "[t]he terms in the endorsement govern if the terms in the body of the policy conflict with the endorsement." *Boelman*, 826 N.W.2d at 502. What's more, the endorsement deleted the strongest expression of lack of intent to benefit Rath originally in the body of the policy: "The Borrower has no interest in this policy." By deleting that text—while also increasing the coverage above the bank's interest and giving Rath a right to payment—the endorsement leaves little doubt that indeed Rath does now have an interest in the policy. He is an intended third-party beneficiary.

Arch tries a few other ways to escape this conclusion. But none succeed. Relying on caselaw from outside Iowa, Arch contends that any benefit given by the endorsement is "incidental" when compared to the contract as a whole. *See, e.g.*, *Davis v. Integon Nat'l Ins. Co.*, No. 21-CV-62170, 2022 WL 59654, at *4 (S.D. Fla Jan. 5, 2022). But that type of comparison is irrelevant to the proper third-party-beneficiary analysis under Iowa law, which instead asks us to decide only whether a given promise in a contract is intended to benefit the third party. *See Vogan*, 588 N.W.2d at 423. When the provision manifests that intent, the beneficiary is

not "incidental"; he is an intended third-party beneficiary, entitled to bring a contract suit. And our supreme court has repeatedly recognized intended third-party beneficiaries based on comparatively minor contract provisions in larger contracts with other significant purposes not benefiting the third-party beneficiary. *See, e.g.*, *Midwest Dredging*, 424 N.W.2d at 225–26 (recognizing third-party beneficiary from provisions relating to transportation of certain raw materials in a massive interstate-highway-grading-and-construction contract); *Tredrea*, 584 N.W.2d at 281–82 (recognizing third-party beneficiary from provisions detailing an exception to the exclusivity terms in a larger contract for anesthesiology services at a hospital).

Arch also argues that because Rath's right under the endorsement is "contingent" on any loss being greater than the bank's interest, it does not create a third-party beneficiary. But a third-party beneficiary's rights are enforceable even "when his beneficial interest is dependent on a contingency." *Iowa Home Mut. Cas. Co. v. Farmers Mut. Hail Ins. Co.*, 73 N.W.2d 22, 25 (Iowa 1955).

For the first time at oral argument, Arch pushed even further, contending that the endorsement is not in effect at all because the amount of insurance selected by the contracting parties is not greater than the bank's interest in Rath's home. But this argument was not raised as a ground for summary judgment in the district court or Arch's appellate brief, and thus we cannot consider it. *See State v. Warren*, 955 N.W.2d 848, 860 (Iowa 2021) (holding that appellate courts cannot "decide or consider arguments raised for the first time during oral argument"); *DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002) (holding that because "one party should not ambush another by raising issues on appeal, which that party did not raise in the district court," appellate courts must "not consider a substantive or

procedural issue for the first time on appeal, even though such issue might be the *only* ground available to uphold a district court ruling").[5]

We reach this conclusion based on the application of Iowa contract law to the precise contract terms and factual circumstances of this case. But our reasoning fits comfortably with the precedent from other jurisdictions considering similar questions about third-party-beneficiary status for homeowners under force-placed insurance policies. *See Alvarado v. Lexington Ins. Co.*, 389 S.W.3d 544, 553–55 (Tex. App. 2012) (collecting cases). We do not attempt to synthesize them all. But in our view, the varying outcomes mainly stem from the differing contract terms and litigation strategies of the parties in each case rather than competing legal theories about force-placed insurance policies generally.[6] *See Alvarado*, 389 S.W.3d at 553 (reaching similar conclusion).

---

[5] If Arch tried to raise this factual issue with the single line in its appellate brief that Rath's benefit under the contract is "solely as the consequence of a separate action taken by the Insured, which is not alleged to have been taken here," the lack of any supporting legal or record citations or further elaboration of this argument makes it ineffective to do so. But even if properly raised on appeal, Arch's sole focus on the legal interpretation of the contract terms in its summary judgment motion would still preclude it from asserting this new ground for summary judgment for the first time on appeal. *See DeVoss*, 648 N.W.2d at 63. Indeed, while the amount of insurance selected ($72,151.19) can be found in the record, Arch did not include that fact—nor any information about the value of the bank's interest in the property—in its statement of material facts supporting summary judgment.

[6] *Compare Jones v. Gen. Ins. Co. of Am.*, Civ. No. 07-0844, 2009 WL 1537866, at *8–10 (S.D. Ala. May 29, 2009) (holding that homeowner was third-party beneficiary based on provision—much like the Amount-of-Insurance endorsement here—that entitled homeowner to payment for loss above the bank's interest), *with Barbe v. Ocwen Loan Servicing, LLC*, 383 F. Supp. 3d 634, 642–43 (E.D. La. 2019) (recognizing that similar loss-payee provision could make homeowner third-party beneficiary, but dismissing case with leave to amend because of failure to allege facts about the mortgage balance or amount of loss that would support such claim), *and Garcia v. Great Am. Assurance Co.*, Civ. No. H-23-0090, 2023 WL 3262061, at *3 (S.D. Tex. May 4, 2023) (holding that homeowner who could "not cite any Policy term that indicates an intent to benefit him" was not third-party beneficiary).

Likewise, our holding here should not be read as adopting a universal rule that a homeowner is always a third-party beneficiary of a force-placed insurance policy. Nor does it mean that Rath will necessarily succeed—or even get to trial—on any of his claims. The parties fought a preliminary legal skirmish on the limited ground chosen by Arch—whether Rath is a third-party beneficiary under the contract. And because Arch lost that battle, the fight must now go on.

In sum, the insurance contract between Arch and the bank manifests an intent to benefit Rath through its Amount-of-Insurance endorsement. Rath is thus an intended third-party beneficiary under the contract. And the district court's grant of summary judgment to Rath based on the contrary holding must be reversed. The case is remanded for further proceedings on all Rath's claims in his second amended petition consistent with this opinion.

**REVERSED AND REMANDED.**

Doyle, S.J., concurs; Schumacher, P.J., dissents.

**SCHUMACHER, Presiding Judge** (dissenting).

A lender obtained a force-placed mortgage insurance policy to protect its interest when the borrower allowed his insurance coverage for mortgaged property to lapse, placing the lender's collateral at risk. Following the 2020 derecho, the borrower initiated action against the lender's insurance carrier directly for coverage for damage to his home. While the law presumes that an insurance contract governs only those who are parties to it, the borrower does not claim to be a party to the contract. Rather, he asserts he is an intended third-party beneficiary of his lender's force-placed policy.

The policy does not name the borrower as an additional insured, delineate that the policy covers the borrower's interest in the insured property, or otherwise state that the borrower is a beneficiary of the lender's coverage, including that of a third-party beneficiary. To the contrary, the policy indicates that no direct or indirect coverage is provided to the borrower. The trial court properly granted summary judgment, which we should affirm. As we do not, I respectfully dissent.

Rath owns a home in Cedar Rapids, where he has lived since 2016. First National Bank of America (FNBA) is the mortgage holder of the property. In 2019, Rath failed to maintain home insurance as required by the mortgage agreement. As a result, FNBA obtained a force-placed insurance policy from Arch to protect its interest in the property,[7] which was valued at $72,151.19. The policy listed FNBA as the "Named Insured," and it stated, "[t]he Borrower is not a Named

---

[7] According to Rath, "I was struggling to make payments for insurance at the time and therefore I made the payments to First National for the insurance it had obtained." FNBA billed Rath monthly for the insurance premiums, "plus a fee of $8.00 to service each insurance premium payment."

Insured under this policy and no coverage is provided, either directly or indirectly, to the Borrower."

The policy automatically renewed each April. Arch sent Rath a "Mortgage Hazard Program Notice of Insurance," which provided the coverage period (April 4, 2020, to April 4, 2021) of FNBA's policy, the borrower's "name and mailing address," and the address of the covered property (Rath's home). It also stated in relevant part:

> **This is not a Homeowner's Policy:** This insurance provides dwelling protection against loss to the property from perils including but not limited to fire, lightning, explosion, vandalism and riot; subject to the terms, conditions and exclusions set forth in the lender's master policy. This coverage may not meet your insurance needs. There is no liability, theft of contents, flood or earthquake coverage. In the event of a total loss, the limits provided above may not be adequate to restore the property.
> **Deductible:** In the event of loss, this policy shall be subject to a deductible as defined in the policy Declarations of the lender's master policy. If more than one dwelling is insured and damaged by the same occurrence, the deductible shall apply separately to each dwelling.
> **This Notice of Insurance is for information only. It neither amends, extends nor alters the coverage afforded by the lender's master policy which it describes.**

In August 2020, Rath's home sustained damage as a result of a derecho windstorm. Rath contacted FNBA to report the damages, and FNBA initiated a claim with Arch. Arch sent an adjuster to Rath's home to inspect the damage. The adjuster determined "the dwelling sustained damage due to wind and tree impact." Upon its review of FNBA's policy, Arch found "there is coverage for this loss" and notified FNBA.

But Rath disagreed with the estimate. Per Rath's request, FNBA contacted Arch to request "the adjuster to come back out as [Rath] stated he missed a lot during the initial visit." Arch responded:

> At this point we won't send the adjuster back out. If we are presented with 3 estimates from licensed contractors we will then consider a re-inspection or work with a contractor on an agreed cost of repair. The borrower has indicated that half of the roof was "missed." However, this is not the case, the front slope did not sustain wind damage. It is, however, suffering from deterioration and needs to be replaced. As for the tree we look at that cost in 2 different ways. The cost associated with removing the tree from the covered structure to the ground is considered part of the structure repair cost. Beyond that, any removal of the tree is limited to $250. As for the electrical, we are aware that code requirements may require increased cost. However, we will only consider an adjustment to this cost if we have an estimate and a copy of the code requirements from a licensed contractor/electrician.

Rath continued to maintain "a lot was missed" and prepared to collect estimates from contractors. FNBA asked Arch "if there is anything in particular that [Arch is] needing to see regarding these 'missed' items?" Arch responded, "In general, if the contractors feel there are 'missed items' they should take photos of the missed items and include them in their estimate. Once we receive the estimates and photos we can review them to determine if we need to adjust our estimate." No further action was taken on the file until February 2021, at which time Arch noted FNBA did "not anticipate repairs to be done or to pursue depreciation." Arch closed the file.

According to Rath, "all contractors were overbooked due to the huge number of derecho losses in the area." In April 2021, Rath obtained a roofing estimate "valu[ing] the loss at a replacement cost value of $23,331.67 and an actual cash value of $19,442.97." Rath made no repairs to the home.

In August 2021, Rath initiated this action against Arch.[8]  Arch filed a pre-answer motion to dismiss, claiming Rath "lack[ed] standing to pursue claims" against Arch because Rath was neither a party nor third-party beneficiary to the insurance policy Arch issued to FNBA.  The district court entered a ruling denying Arch's motion, finding in relevant part, "[v]iewing the allegations of the Petition in the light most favorable to [Rath], the Court finds it cannot be said with certainty that there is no set of facts under which [Rath] may be entitled to recover against [Arch], under any state of facts."  Accordingly, the court concluded Rath's claims "are not appropriately dismissed under a pre-answer motion to dismiss for failure to state a claim upon which relief may be granted."

Arch later moved for summary judgment, claiming "[b]ecause Plaintiffs are not intended third party beneficiaries to the Policy, Plaintiffs cannot succeed with their claims for breach of contract, bad faith, or declaratory relief."  Rath resisted Arch's motion and filed a motion for partial summary judgment "on the issue of their third-party beneficiary status based on the clear Policy language," which Rath "agree[d] with [Arch] is a matter of law and can be determined by the Court on summary judgment."

The district court determined the insurance policy "includes clear language that negates coverage for a borrower under the policy."  The court further determined "[t]here is no language in the policy, including the provisions relied on by Plaintiffs, which shows that there was any intent by the contracting parties to provide for Plaintiffs to have any third-party benefit on Plaintiffs."  The court

---

[8] Rath thereafter filed several amended petitions.  Rath's second amended petition is the one we focus on for purposes of this appeal.

therefore found Arch's motion "should be granted as to Plaintiffs' breach of contract claim," and "[b]ecause Plaintiffs cannot succeed on the breach of contract claim, the bad faith, unjust enrichment, and declaratory judgment/injunctive relief claims also fail as a matter of law." Accordingly, the court granted Arch's motion for summary judgment, denied Rath's motion for partial summary judgment, and dismissed Rath's claims. Rath appealed.

Rath contends the district court erred in failing to find he was a third-party beneficiary to FNBA's insurance policy. Arch maintains the court correctly dismissed Rath's breach-of-contract claim because Rath has "only an incidental benefit under the policy, which is not sufficient to confer third-party beneficiary status."

For third-party beneficiary cases, Iowa has adopted the principles below from the Restatement (Second) of Contracts:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Vogan v. Hayes Appraisal Assocs., Inc.*, 588 N.W.2d 420, 423 (Iowa 1999) (quoting Restatement (Second) of Contracts § 302 (Am. Law. Inst. 1979)). "[T]he primary question in a third-party beneficiary case is whether the contract manifests an intent to benefit a third party." *Id.*; *accord Tredrea v. Anesthesia & Analgesia, P.C.*, 584 N.W.2d 276, 281 (Iowa 1998); *accord Midwest Dredging Co. v.*

*McAninch Corp.*, 424 N.W.2d 216, 224 (Iowa 1988). "However, this intent need not be to benefit a third party directly." *Vogan*, 588 N.W.2d at 423.

> [W]hen a contract is made, the two or more contracting parties have separate purposes; each is stimulated by various motives, some of which he may not be acutely conscious . . . . A third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others . . . if the promised performance will be of pecuniary benefit to [the third party] and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract.

*Id.* at 423–24 (citation omitted). "In applying section 302, . . . the promisee's intent generally controls." *RPC Liquidation v. Iowa Dep't of Transp.*, 717 N.W.2d 317, 319 (Iowa 2006). To determine intent, the court "look[s] to the language of the contract and to the circumstances surrounding it." *Id.*

The circumstances surrounding the insurance policy are set forth above. The relevant language of the policy includes the following. The Declarations Page lists the "**NAMED INSURED:** FIRST NATIONAL BANK OF AMERICA" and "**POLICY PERIOD: From:** 02/01/2019 **To:** Continuing Until Terminated." The Declarations Page further provides, **"This Policy does not provide coverage for Errors & Omissions or liability Insurance, nor does It provide coverage for the Interest or equity of the Borrower as It Is collateral protection Insurance, protecting Your Interest, subject to the Policy terms and conditions."** The policy states:

**MORTGAGE HAZARD INSURANCE**

Throughout this policy **"You"** and "**Your"** refer to **the Named Insured** shown on the Declarations Page; "**We", "Us",** and **"Our"** refer to the Company providing this insurance as shown on the Declarations Page.
. . . .

***I. AGREEMENT***

In return for payment of the premium due and **Your** compliance with all applicable provisions of this policy, the Company will provide **You** the **Mortgagee Interest** insurance described in this policy.

. . . .

## II. DEFINITIONS

A.      The **Named Insured** means the creditor, lending institution, company, or person holding and/or servicing the **Mortgagee Interest** on the **Described Location.** The **Borrower** is not a **Named Insured** under this policy and no coverage is provided, either directly or indirectly, to the **Borrower.**

B.      The **Borrower** is the purchaser and/or owner of the **Described Location** for whom **You** have financed property or which **You** are servicing for others under written agreement. The **Borrower** is neither a **Named Insured** nor an additional named insured under this policy; however, the **Borrower** shall be considered an additional loss payee only as respects amounts of insurance over and above the interests of the **Named Insured** in the **Described Location**.[9]

. . . .

F.      **Mortgagee Interest** means **Your** interest in the **Described Location** under a conditional sales agreement, mortgage, deed of trust, contract for deed, loan contract, contract for sale, or any other instrument representing **Your** interest in the **Described Location** as limited herein. **Mortgagee Interest** includes the interest of others on loans **You** service for them under a written servicing agreement or contract. **Your** interest in foreclosed property shall in no event exceed the mortgage balance due on the date title passes to **You.** Foreclosed property is understood to include **Your interest** in all property acquired by deed in lieu of foreclosure.

. . . .

## VIII. CONDITIONS

. . . .

F.      **Appraisal**—If **You** and **We** fail to agree on the amount of loss, either can demand that the amount of the loss be set by appraisal.

Rath relies on the definition of "Borrower," as provided by the endorsement in section II.B set forth above, to support his claim of third-party beneficiary status under the policy. Rath argues that the endorsement "expressly recognizes an

---

[9] This definition of Borrower under section **II.B DEFINITIONS** was included as endorsement number 00 MHP0028 00 04 15 to the policy.

interest of the Borrower as an additional loss payee." Arch acknowledges the endorsement established Rath as an additional loss payee. But even this endorsement, by its terms, insured only FNBA's interest in the property and not the property itself or Rath's interest in the property. *See* Restatement (Second) of Contracts § 302 cmt. e ("Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, *no duty to him is created.*" (emphasis added)); *see also Mallavarapu v. City of Cedar Falls*, No. 19-1792, 2020 WL 7383115, at *5 (Iowa Ct. App. Dec. 16, 2020) ("The key difference between an incidental beneficiary and an intended beneficiary is the duty owed to the third party by the contracting parties.").

The endorsement did not establish third-party beneficiary status in Rath. This is especially clear given the express disclaimers providing that the Borrower is "not a Named Insured nor an additional named insured under this policy"; the policy does not "provide coverage for the Interest or equity of the Borrower," and most significantly, "The Borrower is not a Named Insured under this policy and no coverage is provided*, either directly or indirectly, to the Borrower.*" (Emphasis added.) *See Mallavarapu*, 2020 WL 7383115, at *5 ("In section 302 cases, 'the intent of the promisee is generally considered controlling.'" (quoting *Midwest Dredging Co.*, 424 N.W.2d at 224)).

The district court construed the policy language as follows:

> Even when the facts are viewed in the light most favorable to Plaintiffs, the Court concludes there is no genuine issue of material fact on the question of whether Plaintiffs are intended third-party beneficiaries. The language of the insurance policy is not capable of more than one reasonable interpretation, and thus there is no ambiguity in the policy; rather, the parties simply disagree about the meaning of terms in the policy, which does not establish an

ambiguity. The policy includes clear language that negates coverage for a borrower under the policy. This language includes that the policy does not "provide coverage for the Interest or equity of the Borrower" and that the "Borrower is not a Named Insured under this policy and no coverage is provided, either directly or indirectly, to the Borrower." The "Definitions" section of the policy also provides that the "Borrower is not a Named Insured under this policy and no coverage is provided, either directly or indirectly, to the Borrower." The Court agrees with Defendant that these are clear, express disclaimers of any third-party beneficiary status on the part of Plaintiffs. At most, as Defendant argues, Plaintiffs are incidental beneficiaries of the policy, since they do not have any direct or primary benefit under the policy. There is no language in the policy, including the provisions relied on by Plaintiffs, that shows that there was any intent by the contracting parties to provide for Plaintiffs to have any third-party benefit on Plaintiffs. The Notice of Insurance document relied on by Plaintiffs clearly states that it is not a homeowner's policy, and that it does not extend any provision therein to change the coverage terms of the policy itself.

The policy language here does not evince "an intent to benefit a third party." *See Vogan*, 588 N.W.2d at 423. Rather, it expressed—unambiguously—that "no coverage [wa]s provided, either directly or indirectly, to [Rath]." *See RPC Liquidation*, 717 N.W.2d at 320 ("When a contract expressly negates the creation of third-party beneficiaries, we have rejected the claim that such status exists."); *Osmic v. Nationwide Agribusiness Ins. Co.*, 841 N.W.2d 853, 860 (Iowa 2014) ("Where there is a contract, the right of a beneficiary is subject to any limitations imposed by the terms of the contract." (quoting Restatement (Second) of Contracts § 309 cmt. b)); *but see Vogan*, 588 N.W.2d at 424 (holding home buyers were third-party beneficiaries of an agreement between their lender and an appraiser hired by the lender to monitor the progress of the construction of the home, finding, "[t]he promised performance of Hayes Appraisal to MidAmerica will be of pecuniary benefit to the Vogans, and the contract is so expressed as to give Hayes reason

to know that such benefit is contemplated by MidAmerica as one of the motivating causes of making the contract").

I disagree with the majority opinion's conclusion that reversal of the district court's grant of summary judgment "fits comfortably with the precedent from other jurisdictions considering similar questions about third-party beneficiary status for homeowners under force-placed insurance policies." The majority opinion cites a case from Minnesota to support the conclusion that Rath is a third-party beneficiary. *See Hickman v. Safeco Ins. Co. of America,* 695 N.W.2d 365 (Minn. 2005). But there are stark differences in the two policies at play. The *Hickman* court held that because the insurance contract contained several provisions that provided for the payment of insurance proceeds to the "borrower," he was a third-party beneficiary to the insurance contract. *Id.* at 370–71. The insurance contract in *Hickman* provided that the insurer would pay any amount in excess of the mortgagee's interest to the borrower; the borrower had the right to seek arbitration of the appraisal of a loss covered by the policy if the borrower disagreed with the amount of loss determined by the insurer; and the policy included coverage for personal property that the mortgagee had no insurable interest. *Id.* at 370–71. Because of these clauses, the court believed that the policy meant that the borrower was an intended third-party beneficiary. *Id.* at 371. Such provisions are absent in the policy involved in the instant appeal.

In *Harrison v. Safeco Insurance Company of America,* a court addressed issues with regard to lender-placed insurance policies. No. 06-4664, 2007 WL 1244268, at *3–5 (E.D. La. Jan. 26, 2007). The plaintiffs filed suit against the defendants claiming that the defendants intentionally, improperly, unjustly, and

negligently adjusted insurance claims after Hurricane Katrina. *Id.* at *1. The plaintiffs, however, were not parties to the insurance policies, but rather the policies were "lender-placed" policies where the mortgagees paid the premiums on the policies. *Id.* The court found that the plaintiffs lacked standing to bring their claims because they were not parties to the insurance contracts. *Id.* at *4. According to the court, there was no relationship between the plaintiffs and the defendant insurers and "the property was only insured because [the p]laintiffs' mortgage holders obtained coverage when [the p]laintiffs could not provide them with sufficient proof of coverage." *Id.* at *5. The court also found that the plaintiffs were not third-party beneficiaries to the policies. *Id.* In so holding, the court found that the plaintiffs were not intended beneficiaries under the policies, and the references to "borrowers" in the policies did not create "a stipulation pour auturi." *Id.*; *accord Jones v. Proctor Fin. Ins. Corp.*, No. Civ.A. 06-9503, 2007 WL 4206863, at *2 (E.D. La. Nov. 21, 2007).

And considering the policy language quoted above, Rath's invitation to find the policy's peripheral coverage for "lawns, plants, shrubs, and trees"; the policy's requirement that FNBA report its "Borrower Name and Address"; and the policy's condition allowing "[t]he Borrower, at [FNBA's] discretion and as [FNBA's] representative, [to] submit claims on [FNBA's] behalf" amount to "recogni[tion of] the interests of the Borrower," are sufficient to make Rath a third-party beneficiary should also be declined.

I concur with the district court that the policy language unambiguously resolves the legal question presented here. *See RPC Liquidation*, 717 N.W.2d at 321 ("In determining the parties' intention we are bound by what the contract says

except in cases of ambiguity. And when the contract is not ambiguous, we will enforce it as written." (internal citation omitted)). The district court highlighted the absence of precedent in Iowa concerning third-party beneficiaries on forced-placed insurance policies, stating:

> The parties have gone to great lengths to provide the Court with authorities from other jurisdictions that support their respective positions. While the Court is appreciative of the parties' efforts to provide these authorities, the Court finds it unnecessary to consider these authorities. First, the parties have been able to locate authority that supports their respective positions while also providing authority that contradicts the other party's position. In short, there is authority from other jurisdictions that could be construed as supporting the positions of both sides, and it is not clear which side the Iowa Appellate Courts would take on these issues. Second, the Court finds that consideration of such authority is moot, because application of Iowa law regarding interpretation of insurance policies and third-party beneficiaries is sufficient for the Court to reach a legal conclusion, based on the language of the policy, that Plaintiffs are not intended third-party beneficiaries of the insurance policy.

Before concluding, I note another point of disagreement with the majority opinion. I disagree with the majority determination that Arch was unable to offer a theory of intent for the endorsement at oral argument. Arch has consistently argued that, at best, Rath was an incidental beneficiary to the insurance policy. And as noted by Arch, the endorsement states that it does not change any of the definitions of the insurance policy. While the policy does not use the term "third-party beneficiaries," the policy states that it does not directly or indirectly benefit Rath.

Finding no error in the court's determination that Rath is not an intended third-party beneficiary under FNBA's force-placed insurance policy on his home, the district court should be affirmed.